UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP BERRYMAN,
et al.,

          Plaintiffs,          CIVIL ACTION NO. 06-CV-11010-DT

   vs.

                            DISTRICT JUDGE BERNARD A. FRIEDMAN

JENNIFER GRANHOLM,      MAGISTRATE JUDGE MONA K. MAJZOUB
et al.,

          Defendants.

_____/

## REPORT AND RECOMMENDATION

I.    **RECOMMENDATION**:

    **A**. Defendants' Motion for Summary Judgment filed on February 8, 2007 (docket no. 31) should be **GRANTED IN PART AND DENIED IN PART** as follows:

    1. Deny the motion as to Defendants' request for dismissal of Plaintiff Berryman's claims of a RLUIPA violation by denial of group religious services and by denial of opportunity to display religious symbols based on a lack of exhaustion of administrative remedies; grant the motion on these claims as to Plaintiff Koenig.

    2. Deny the motion as to Defendants' assertion of sovereign immunity from damages under RLUIPA.

    3. Grant the motion as to Defendants' assertion of qualified immunity in their individual capacities from monetary damages under RLUIPA.

    4. Deny the motion as to Defendants' liability under RLUIPA for an alleged lack of "substantial burden" on Plaintiffs' claims of denial of kosher meals; grant as to ability to give to poor and guard being allowed to eat kosher meals.

5. Deny the motion as to Defendants' liability under the First Amendment Free Exercise Clause.

6. Grant the motion as to Plaintiffs' retaliation claim.

7. Grant the motion as to Plaintiffs' equal protection claim.

8. Grant the motion as to Plaintiffs' Eighth Amendment claims.

9. Grant the motion based on a lack of personal involvement in the denial of kosher meals for Defendants Granholm, Caruso, and Straub; deny as to the other Defendants.

10. Grant the motion as to Defendants' qualified immunity from damages on Plaintiffs' First Amendment, Eighth Amendment, retaliation, and equal protection claims.

**B.** Plaintiffs' Motions for Temporary Restraining Order and for Permanent Injunction filed on February 22, 2007 (docket no. 35) should be **DENIED.**

**C.** Plaintiffs' Motions to Dispense with the Requirement of Security filed on March 1, 2007 (docket no. 39) should be **DENIED** as moot.

## II.   **REPORT**:

### A.   *Procedural History and Claims*

This matter comes before the Court on Defendants' Motion for Summary Judgment filed on February 8, 2007 (docket no. 31), and on Plaintiffs' Motion for Temporary Restraining Order and for Permanent Injunction filed on February 22, 2007 (docket no. 35) and a related Motion to Dispense with the Requirement of Security filed by Plaintiffs on March 1, 2007 (docket no. 39).  Plaintiffs have also filed a Motion to take Judicial Notice.  (Docket no. 41).  The Motion to take Judicial Notice will be denied by separate order entered at the same time as this Recommendation.  Plaintiffs have responded to the Defendants' Motion for Summary Judgment.  (Docket no. 40).  Defendants have filed a Reply brief.  (Docket no. 42).  Defendants have also responded to Plaintiffs' motion for injunctive relief.

(Docket no. 43). All pretrial matters have been referred to the undersigned for determination or recommendation. (Docket no. 10). These matters are therefore ready for ruling.

Plaintiffs, two Michigan state inmates, allege that Defendant prison officials improperly removed them from the prison's kosher diet program, and took other actions, thereby denying them of their rights to practice their religion, Judaism. (Docket no. 1). They bring this action pursuant to 42 U.S.C. § 1983. Plaintiffs raise eight causes of action. (*Id.* at 28-29). Seven of these causes of action allege a violation of 42 U.S.C. § 2000cc-1, the Religious Land Use and Institutionalized Persons Act (RLUIPA). Plaintiffs claim that Defendants violated RLUIPA by imprisoning them under conditions which are incompatible with the exercise of the Jewish religion when less restrictive means of confinement are available (first cause of action); by prohibiting Plaintiffs from exercising their religion by denying them kosher meals and by not allowing them to meet for worship on their Sabbath (Saturday) (second cause of action); by prohibiting Plaintiffs from exercising their religion by denying access to a kosher diet and necessary worship with other Jewish prisoners (third cause of action); by prohibiting Plaintiffs from exercising their religion by denying them access to a kosher diet which is the only access Plaintiffs have to eat kosher food (fourth cause of action); by prohibiting Plaintiffs from exercising their religion by requiring them to hide their religious symbols and emblems from plain sight (fifth cause of action); by creating and maintaining a pervasive atmosphere of hostility toward Plaintiffs' exercise of the Jewish religion in Michigan prisons thus substantially burdening their religious exercise (seventh cause of action); and by refusing to comply with the requirements of RLUIPA, thereby prohibiting Plaintiffs from any meaningful exercise of religion (eight cause of action).

Plaintiffs claim in their sixth cause of action that Defendants have prohibited them from exercising their religion and refused to allow them to eat kosher foods. They do not specify the law under which they are proceeding for this cause of action. The Court surmises that it is a claim under

the First Amendment which Plaintiffs mention elsewhere in their Complaint.  (Docket no. 1 at 6).

Although not included in their causes of action, Plaintiffs also allege violations of the Equal Protection Clause and the Cruel and Unusual Punishments Clause of the Eighth Amendment.  (*Id.*) They also cite 42 U.S.C. § 1988 in their Complaint.  (*Id.* at 6).  However, this statute simply authorizes certain fees for the prevailing party in a civil rights action.  The Court therefore finds no separate cause of action based on section 1988.

  B.  *Facts*

Plaintiffs Berryman and Koenig are prisoners who at the time the Complaint was filed were incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan.  Defendant Granholm is the Governor of the State of Michigan.  Defendant Caruso is the Director of the Michigan Department of Corrections (MDOC).  Defendant Straub is the Deputy Director of the MDOC.  Defendant Lafler is the Warden of the St. Louis Correctional Facility (SLF).  Defendant Rivard is the Deputy Warden at SLF.  Defendant McCabe is an Assistant Deputy Warden at SLF.  Defendant Lance is the Facility Manager at SLF.  Defendant Wallace is MDOC Administrator of Policy and Rules Development. Defendant Burnett is the Special Activities Coordinator for the MDOC.  Defendant Peet is a Resident Unit Manager at SLF.  Defendant McClellan is the MDOC Food Service Program Director.  These Defendants are sued in their individual and official capacities.  (Docket no. 1 at 9-10).

Plaintiff Berryman alleges that on May 20, 2005 he was issued a Notice of Intent to Conduct an Administrative Hearing (NOI) by Defendant Lance in an attempt to have him removed from the kosher diet program.  He alleges that Defendant Lance sent an email to Defendant McCabe recommending a review of this program.  Specifically, the prisoners' store orders were to be examined and if a prisoner on the kosher diet program was found to be ordering non-kosher foods, a hearing was to be held to remove them from the diet program.  (Docket no. 1 at 12).  Plaintiff further alleges that this email listed

himself, Defendant Koenig, and five other prisoners as having purchased non-kosher food from the prison store. Defendant Burnette and McClellan made this recommendation to conduct this review, according to Plaintiff.

Plaintiff Berryman states that the NOI he was issued charged him with violating MDOC Policy Directive 05.03.150 and specifically the paragraph which states that "A prisoner approved to eat from a religious menu shall have that approval rescinded if s/he eats, or has in his/her possession, any food item that violates a tenet of his/her designated religion." (Docket no. 1 at 13; docket no. 32, ex. 17 (§ WW)). He was charged with ordering the non-kosher foods Macaroni & Cheese, Squeeze Pizza Sauce, Chili Chicken Noodles, Digby's All Stars Candy, Fire Balls, and Chick-o-Sticks. (*Id.*)

On May 27, 2005, Plaintiff Berryman alleges that MDOC employee J. Kelly conducted the NOI hearing and found that Plaintiff had not violated the policy because he was not "caught eating any non-kosher food nor was any non-kosher food found in his possession." (*Id.* at 14). Plaintiff further alleges that Defendants Rivard, Lafler, Lance, McCabe, Burnett, McClellan, Straub, Caruso, and Wallace became aware of this not guilty finding and ordered an amended hearing.

The amended hearing was held by Defendant Peet who found that Plaintiff had violated PD 05.03.150. The copy of the hearing report (docket no. 1 at 34) does not show the date of the amended hearing. The report charges that Plaintiff Berryman completed store orders on May 2 and 16, 2005 for several non-kosher items. The order was completed and sent to unit one. Plaintiff Berryman signed for and received these items. The money was removed from his account. Because Plaintiff was approved for a non-kosher diet, the hearing officer found a violation and recommended that his approval to eat from the kosher meal program be rescinded. (*Id.*) The report reflects that Plaintiff stated that the items were not ordered for him but for Prisoner Truitte. Plaintiff admitted that he signed for the items, and they were placed in his lap. He and Truitte then went to Truitte's cell where the non-

-5-

kosher food was removed from the bag and placed in Truitte's cell.  Plaintiff said that he never physically possessed the items.  Defendant Peet found that Plaintiff willingly ordered the food and was in possession of them.  Peet also stated that a prison rule prohibits a prisoner from loaning, borrowing, trading, transferring, passing, selling or giving away personal property.  (*Id.*)

Plaintiff Koenig alleges that he also was served an NOI for violation of Policy Directive 05.03.150. (Docket no. 1 at 15).  The food items were slightly different from those ordered by Plaintiff Berryman.  MDOC employee L. Adams held Koenig's first NOI hearing.  Adams found Plaintiff not guilty of violating the policy because he was not "caught eating any non-kosher food nor was any non-kosher food found in his possession." (*Id.* at 16).  The hearing report reflects that Plaintiff Koenig stated that there is no way for him to know which items are kosher before he buys them because the store list does not show which items are kosher. (Docket no. 32, ex. 15).  Plaintiff alleges that the same Defendants as above became aware of his not guilty finding and ordered an amended hearing which was held by Defendant Peet.  Plaintiff Koenig alleges that Defendant Peet told him that "he had been order [sic] by Defendants Lafler, Rivard to hold a second hearing and to reverse the original hearing in order to support Dave Burnett and others [sic] wishes." (Docket no. 1 at 17).  Plaintiffs each allege that they told Defendant Peet that they never had possession of the items and that they would be violating a tenet of the Jewish Code of Conduct if they refused to give to or help a poor prisoner who had nothing.  (*Id.*)

Plaintiffs also allege that Defendant Lance refused to place "kosher marks" on store items so that prisoners would know whether the food items they ordered were kosher.  (*Id.* at 18).  They also allege that it is the practice of the MDOC to allow prison guards to eat from the kosher diet program without being forced to take a test as prisoners are required.  (*Id.*)  This is the basis for Plaintiffs' Equal Protection Clause claim.  Plaintiffs state that they did not violate any tenet of their religion by ordering store items that were given to other inmates.  They further allege that they have been denied the

-6-

opportunity to practice their religion on their Sabbath and have been told by Defendants Lafler, Rivard, McCabe, and Burnette to "have your services on Sunday like real Christians do." (*Id.* at 19).

After the hearings by Defendant Peet, Plaintiffs allege that Defendants Lefler, Caruso and Straub upheld their grievance rejections and thereby denied them access to a kosher diet which is a requirement of their religion. Defendant Wallace allegedly took an active part in orchestrating the amended hearings for Plaintiffs. Plaintiffs allege that they have suffered physical injury by Defendants' actions including the "degeneration atrophy of [their] spiritual body, and the shocking of Plaintiff Berryman's diet causing the more rapid growth of Cancer." (*Id.* at 25). Plaintiffs seek as relief declaratory and injunctive relief, as well as damages. (*Id.* at 29-31).

C.      *Standard of Review*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact). Rule 56

"requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts' showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c) & (e)).

To establish a violation of 42 U.S.C. § 1983, a plaintiff must show that defendants violated a right secured by the federal constitution or laws and must show that the deprivation was committed by someone acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

D.      RLUIPA

Most of Plaintiffs' claims allege violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, *et seq.* Congress passed RLUIPA in 2000 to make the Religious Freedom Restoration Act's strict scrutiny standard applicable, as pertinent to this case, whenever a substantial burden is placed on religious exercise by a state government when it occurs in a program or activity that receives federal financial assistance.[1] *Cutter v. Wilkinson*, 423 F.3d 579, 582-83 (6th Cir. 2005).

Defendants contend that Plaintiffs have not demonstrated a "substantial burden" on religious exercise. Thus, they are not entitled to any relief under RLUIPA. (Docket no. 31 at 25). Plaintiffs' primary argument is that Defendants are burdening their practice of their religion by denying them kosher meals. A "substantial burden" under the Act exists where the state puts "substantial pressure on an adherent to modify his [or her] behavior and to violate his [or her] beliefs." *See Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981); *Boomer v. Irvin*, 963 F. Supp 227, 230 (W.D.N.Y. 1997) (applying RFRA).

--------

[1] Defendants do not contend that the program or activity at issue in this case does not receive federal financial assistance. *See Kaufman v. Carter*, 952 F. Supp. 520, 527 (W.D. Mich. 1996) ("It is not disputed that the Michigan Department of Corrections receives federal financial assistance.").

At least one court has found that the denial of kosher meals presents a substantial burden on the exercise of the Jewish faith. *Madison v. Riter*, 240 F. Supp. 2d 566, 569 n.2 (W.D. Va. 2003) (plaintiff alleging denial of kosher diet met substantial burden threshold under RLUIPA), *rev'd on other grounds*, 355 F.3d 310 (4th Cir. 2003). Defendants do not argue to the contrary. They argue that their policies do not substantially burden Plaintiffs' ability to give to the poor. (Docket no. 31 at 27). They also argue that Plaintiffs were both eligible on May 21, 2006, after being off the kosher meal program for one year, to re-apply to the program but neither has done so. This, as well as Plaintiffs removing themselves voluntarily from the program in the past, suggests that Plaintiffs are not sincere in their belief that they need a kosher diet, according to Defendants. (*Id.*)

Defendants do not provide authority in which a court found that plaintiffs failed to make a showing of substantial burden because the court found that plaintiffs' beliefs were not sincere. The meager evidence presented by Defendants on this issue does not permit such a finding even if there were legal authority for doing so. The fact that at some point in the past Plaintiffs may have voluntarily removed themselves from the kosher diet program does not compel the conclusion that at the time they were denied kosher meals their beliefs were not sincere.[2] Moreover, Plaintiffs argue that they have not sought reinstatement to the program because to do so requires them to admit that they violated a tenet of their religion. (Docket no. 40 at 7). Defendants have not stated exactly what prisoners must do to be reinstated to the program. Even if prisoners are not required to admit a violation of their religious tenets to be reinstated, the issue of the sincerity of beliefs is one not amenable to determination on summary judgment. *Gay v. S.U.N.Y. Health Science Ctr.*, 1998 WL 765190, slip copy at 6 (E.D.N.Y. July 22, 1998). Accordingly, summary judgment should not be granted on the issue of whether Defendants

---

[2] Plaintiff Berryman states in his affidavit that he withdrew after his wife had a stroke and he needed to be transferred to a prison near her which he could do only after removing himself from the kosher diet program. (Docket no. 40-2 at 18).

-9-

violated Plaintiffs rights under RLUIPA by denying them kosher meals.

As mentioned above, Defendants also contend that Plaintiffs have not shown that their policies substantially burden their ability to give to the poor. The Court agrees. Generally, a substantial burden will not be shown where the prisoner has equivalent alternatives to practice his religion. *See Dunlap v. Losey*, 40 Fed. App'x 41, 43 (6th Cir. 2002). The prisoner usually must show that he attempted to engage these alternative methods before a substantial burden will be found. *See id.* (finding that temporary deprivation of hardcover Bible failed to show substantial burden when prisoner could have requested softcover Bible); *see also Watkins v. Shabazz*, 180 Fed. App'x 773, 775 (9th Cir. 2006) (no substantial burden under RLUIPA when prisoner given two alternatives to eating non-Halal meat: to eat nutritionally equivalent meat substitute or find outside religious organization to contract with prison to provide Halal meat). A rule or regulation that makes the practice of a prisoner's religion somewhat more difficult, but which has no tendency to coerce him into acting contrary to his religious beliefs does not constitute a substantial burden. *See id.* (citing *Thiry v. Carlson*, 78 F.3d 1491, 1495 (10th Cir. 1996) (applying standard under RFRA)). Defendants show that their policies allow prisoners to give to charitable organizations. (Docket no. 32, ex. 19 (Policy Directive 04.02.105 V.5)). Plaintiffs do not explain why this method of giving to charity is not sufficient to fulfill their religious obligation. Plaintiffs also do not allege that they have attempted to use this alternative method of giving to the poor. Therefore, the Court finds that Plaintiffs have failed to show that Defendants have placed a substantial burden on their ability to give to the poor. Defendants are entitled to summary judgment on this claim.

The remaining claims of violations of RLUIPA are that Defendants denied Plaintiffs the opportunity to attend group religious services on Saturday and denied them the opportunity to display their religious symbols. Plaintiffs' allegation that a guard or guards are allowed to eat kosher meals without having to exhaust the same procedures as prisoners fails to state a claim for relief under

RLUIPA. Plaintiffs have not shown that this alleged rule or regulation substantially burdens their exercise of their religion. Defendants argue that Plaintiffs failed to exhaust their administrative remedies with respect to the claims of group services and religious symbols and that these claims must therefore be dismissed pursuant to 42 U.S.C. § 1997e(a). (Docket no. 31 at 18-19). There is no dispute that unexhausted claims must be dismissed, but Plaintiffs argue that they have exhausted these claims by raising them at the "Warden's Forum." Defendants concede that issues regarding the content of a policy or procedure may be raised via the Warden's Forum. (Docket no. 31 at 16). Prison policies address group religious services and the wearing of religious items. (Docket no. 32, ex. 17 (Policy Directive 05.03.150, attach. A & sections Y - EE)). Therefore, Plaintiffs' complaints would be directed to the content of these policies. The Warden's Forum would be the proper method to exhaust the administrative remedies for these claims.

Plaintiffs have submitted affidavits stating that they raised these issues at the Warden's Forum. (Docket no. 40, attached affidavits of Berryman, Tairan, and Gregg). They provide evidence that Plaintiff Berryman raised the group worship and religious symbols issues in the Warden's Forum. There is no mention of Plaintiff Koenig raising these claims. In their Reply brief, Defendants argue that the minutes of the Warden's Forum show that Plaintiff Berryman was either not present at these meetings when he says he was or that the relevant issues were not discussed. (Docket no. 42). Defendants attach copies of those minutes. There is therefore a genuine issue of material fact as to whether Plaintiff Berryman has exhausted these claims. Plaintiff Koenig has not shown exhaustion. Defendants are therefore entitled to summary judgment on these two claims as to Koenig, but not as to Plaintiff Berryman.

E.      *First Amendment Free Exercise*

Defendants next contend that they are entitled to summary judgment on Plaintiffs' claim that

they violated Plaintiffs' right to free exercise of their religion under the First Amendment by denying

them kosher meals.  (Docket no. 31 at 28-30).  The Court finds that this is Plaintiffs' First Amendment

claim as raised in their sixth cause of action.  Defendants argue that the limitation placed on Plaintiffs'

meals was reasonably related to legitimate penological interests.  These interests are to avoid offending

sincere adherents by allowing insincere adherents to eat kosher food and to avoid the higher costs of

preparing a kosher meal.  (*Id.* at 29).

The Supreme Court established a four factor test to examine the reasonableness of prison

regulations when they are challenged under the First Amendment.  *Turner v. Safley*, 482 U.S. 78, 89-91

(1987).  First, the court looks to whether there is a valid, rational connection between the prison

regulation and the legitimate governmental interest put forward to justify it.  Second, the court asks

whether there are alternative means of exercising the right that remains open to the prisoner.  Third, the

court considers the impact that accommodation of the asserted right will have on the guards and other

inmates and on the allocation of prison resources generally.  Finally, the existence or absence of ready

alternatives of accommodating the prisoner's rights is relevant to reasonableness.  (*Id.*).

Defendants have failed to show that the prison regulation is reasonably related to a legitimate

governmental interest.  Even if the Court assumes that the interests of limiting the availability of kosher

meals to those holding sincere Jewish religious beliefs and controlling costs are legitimate, the regulation

does not pass muster.  The irreconcilable problem is that the regulation allows Defendants to deny

kosher meals to a prisoner for conduct, such as possessing non-kosher food items, when there has been

no showing that simple possession of non-kosher items violates any tenet of the Jewish faith.  Plaintiffs

state in their verified Complaint that simple possession of non-kosher foods does not violate their

religion.  (Docket no. 1 at 19).  Defendants have not shown otherwise.  Therefore, the regulation is not

reasonably related to the goal of limiting kosher meals to those who are sincere in their beliefs.  There

-12-

are no other alternative means for the prisoner to exercise this right. The Court finds no adverse impact on guards, other prisoners or prison resources if prisoners who have done nothing other than order non-kosher foods are allowed to remain in the kosher food program. Finally, modification of the regulation is a ready alternative that would allow the prisoner to continue eating kosher meals. Accordingly, Defendants should not be granted summary judgment on Plaintiffs' First Amendment claim.

F.     *Retaliation*

In order to state a First Amendment retaliation claim, a plaintiff must allege that he was engaged in protected conduct, an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct, and that the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiffs did not raise a retaliation claim as one of their enumerated causes of action. In the body of their Complaint, however, they allege that Defendants retaliated against them because Plaintiff Berryman raised certain issues in grievances and letters such as prisoners having to pay for postage, being denied coffee at breakfast, and being forced to attend school programs rather than being allowed to work. (Docket no. 1 at 19).

Defendants argue that even if such conduct is protected conduct, Plaintiffs cannot show a causal connection between the conduct and Plaintiffs' removal from the kosher meal program. The Court agrees. The evidence is that Defendants removed Plaintiffs from the kosher meal program because of the requirement of the policy directive. There is no evidence that Defendants removed Plaintiffs from the program due to Berryman's letters or grievances. The fact that other inmates were targeted to be removed from the kosher meal program, as shown by the email Plaintiff provides, supports this conclusion. (Docket no. 1 at 15). When the Defendants would have removed Plaintiffs from the meal program in the absence of such conduct by Berryman, Defendants are entitled to summary judgment

-13-

on the retaliation claim. *Thaddeus-X*, 175 F.3d at 399. Therefore, Defendants should be granted summary judgment on Plaintiffs' retaliation claim.

G.      *Equal Protection*

In order to succeed on this claim Plaintiffs must show intentional and arbitrary discrimination by the state; that is, he must show that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiffs complain that prison guards are allowed to eat kosher meals without having to take a test but that prisoners must take a test. (Docket no. 40 at 19). First, the Court finds that prison guards and prisoners are not similarly situated. They are not subject to the same rules and regulations. Even if these two groups were similarly situated, there is a rational basis for relaxing the standards for guards to access kosher meals. One such reason is because guards would have less incentive to request such meals if they were not sincere in their Jewish beliefs. Accordingly, summary judgment should be granted for Defendants on this claim.

H.      *Cruel and Unusual Punishment*

Plaintiff Berryman claims that Defendants violated his Eighth Amendment rights because his cancer, apparently affecting his prostate and esophagus, was made worse by the type of food he was given to eat after being removed from the kosher diet program. (Docket no. 40 at 22). Plaintiffs also allege that Defendants' actions have resulted in their physical injury by the "degeneration atrophy" of their spiritual bodies. (Docket no. 1 at 25).

In order to state an Eighth Amendment claim for such non-penal conduct, Plaintiffs must show that Defendants' conduct reflects an unnecessary and wanton infliction of pain. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977). Plaintiffs must show that the pain is sufficiently serious. *Wilson v. Seiter*, 501 U.S.

-14-

294, 297-300 (1991).  They must also show that Defendants had a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Such a state of mind occurs when the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Id.* at 837.

Defendants point to the lack of evidence showing that they had any knowledge of Plaintiff Berryman's esophagus problem or his having cancer, or that the non-kosher diet exacerbated these conditions.  They also argue that Plaintiff Koenig has made no allegations regarding an Eighth Amendment violation.  Finally, Defendants contend that harm to one's spiritual body is nothing more than a claim of mental distress for which a prisoner cannot receive damages without a showing of actual, physical injury.  42 U.S.C. § 1997e(e).

Plaintiffs have failed to show significant, probative evidence that the Defendants knew of any cancer or esophageal problem of Plaintiff Berryman or that the discontinuation of Plaintiff's kosher diet would impact negatively such conditions.  Although Plaintiffs allege in their verified Complaint that the change of diet caused the more rapid growth of cancer, this is clearly a subject outside of Plaintiffs' personal knowledge.  Plaintiffs do not offer any medical reports or other such support for this conclusion.  Also, there is no evidence that Defendants had a sufficiently culpable state of mind with regard to any conduct that resulted in the harm to Plaintiffs' spiritual bodies.  Plaintiffs have therefore failed to carry their burden on this claim.  *See Covington*, 205 F.3d at 915.  Defendants' motion for summary judgment should be granted on Plaintiffs' Eighth Amendment claims.

I.     *Personal Involvement of Defendants*

Defendants next move for summary judgment based on the claim that Plaintiffs have failed to show that certain of them were personally involved in removing them from the kosher meal program.

-15-

Defendants Granholm, Caruso, Burnett, Wallace, Straub, McClellan, Lafler, and Rivard argue this point. There is no respondeat superior liability under section 1983. *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005). The supervisory official must condone, encourage, or knowingly acquiesce in the alleged misconduct. (*Id.*)

There is no evidence that Governor Granholm knew of Plaintiffs' removal from the kosher diet program or of any other act that might violate Plaintiffs' rights. A generous reading of Plaintiffs' allegations shows simply that Plaintiff Berryman may have mailed a letter to the Governor. However, Defendants have shown by affidavit that such a letter would not have reached the Governor. (Docket no. 31, ex. 10). Summary judgment should therefore be granted in favor of Defendant Granholm.

Defendant Caruso is the Director of the Department of Corrections, and Defendant Straub is the deputy director. Plaintiffs fail to point the Court toward any evidence showing that they condoned, encouraged or knowingly acquiesced in the alleged wrongful acts against Plaintiffs. Plaintiffs allege that Defendants Caruso and Straub upheld the rejections of their grievances. (Docket no. 1 at 20). However, this is not sufficient to establish liability. *See Manney v. Monroe*, 151 F. Supp. 2d 976, 986 (N.D. Ill. 2001). Therefore, summary judgment should be granted for Defendant Caruso and Straub.

One of the alleged emails of which Plaintiff has presented the content refers to Defendants Burnett and McClellan who allegedly recommended that SLF review the kosher meal program which resulted in Plaintiffs being denied those meals. (Docket no. 1 at 12). The Court finds this to be sufficient evidence of their personal involvement in the alleged wrongful conduct.

Plaintiff claims that Defendant Wallace authorized the amended hearing at which Plaintiffs were found to have violated department policy and which resulted in them being denied kosher meals. Defendant Wallace's affidavit confirms this role. The Court finds that this is sufficient evidence of her personal involvement.

-16-

The affidavits of Warden Lafler and Deputy Warden Rivard also show that they were involved in ordering the amended hearings which resulted in Plaintiffs being denied kosher meals. Therefore, they should not be dismissed from the action on the basis of their non-involvement.

Therefore, summary judgment should be granted on the basis of a lack of personal involvement only for Defendants Granholm, Caruso, and Straub.

J.       *Qualified Immunity*

Defendants seek summary judgment based on qualified immunity for Plaintiffs' First Amendment free exercise claim, their Eighth Amendment claim, their retaliation claim, and their equal protection claim. Qualified immunity protects a government official from liability for damages when sued in his individual capacity. *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 601-02 (6th Cir. 2005). To determine if the immunity applies, a court must ask whether, when taken in the light most favorable to the party asserting injury, the facts alleged show the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no constitutional right would have been violated if the allegations were proved, there is no need to examine the issue further. If a violation could be made out, the next step is to ask whether the right was clearly established. *Id.* The relevant inquiry is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Id.* at 202. A part of this inquiry is whether there is sufficient evidence to show that what the official did was objectively unreasonable in light of the clearly established rights. *Sample v. Bailey*, 409 F.3d 689, 696-97 (6th Cir. 2005).

Accordingly, if a plaintiff has failed to establish a violation of a constitutional right, the defendant is protected by qualified immunity. *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted

a violation of a constitutional right at all."). This Court has already found that Plaintiffs failed to show a violation of their Eighth Amendment rights and failed to establish a violation of their equal protection rights or that they were unconstitutionally retaliated against. Therefore, Defendants are protected by qualified immunity on these claims.

This Court has found that summary judgment should not be granted on Plaintiffs' First Amendment cause of action. The question is therefore whether that right was clearly established at the time the Defendants acted and whether the violation was objectively unreasonable. Here, Defendants denied Plaintiffs their kosher meals based on their violation of the prison regulation. The regulation allowed the denial of such meals to prisoners who possessed non-kosher food items. Defendants were aware that Plaintiffs claimed that they did not eat this food but rather gave it away to other inmates.

The general right of Jewish prisoners to have access to kosher meals was clearly established at the time Defendants acted to deny Plaintiffs their meals. *See McEachin v. McGuinnis*, 357 F.3d 197, 203 (2nd Cir. 2004) ("courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights"). However, the question for immunity purposes is whether a reasonable officer in the Defendants' position would have known that his actions were unlawful in the situation he confronted. *See Saucier*, 533 U.S. at 202. The Court must therefore take into account the prison regulation and the determination that Plaintiffs had possessed the non-kosher food items. When examined at the required level of specificity, the Court finds that an objectively reasonable official could have believed that his actions were lawful.

In *Russell v. Wilkinson*, 79 Fed. App'x 175 (6th Cir. 2003), the prisoner was taken off the kosher meal program in the Ohio prison system based on a finding that he possessed non-kosher food in violation of institutional rules. The prisoner was found to have stolen non-kosher food and purchased non-kosher food from the prison store. He did not claim, as the Plaintiffs do in this case, that he did

-18-

not eat the food.  Although not explicitly stated, the opinion suggests that the prison officials had found that Russell was eating non-kosher food.  *Id.* at 176 (terminated meals on ground that Russell had not complied with dietary requirements of his religion).  The court found that the prison advanced a legitimate penological interest, the maintenance of prison discipline, and that the defendants' policy was rationally related to that interest.  The Sixth Circuit upheld the granting of summary judgment for the prison officials.

The Court finds that this authority is sufficient to allow a reasonable official in the Defendants' position in this case to believe that removing Plaintiffs from the kosher meal program would not violate their First Amendment rights.  The fact situation is almost identical.  The difference is that Russell did not argue that he was not eating non-kosher food and apparently was eating non-kosher food.  Although the Court finds this difference to be critical on the question of whether Defendants are entitled to summary judgment on Plaintiffs' First Amendment claim, it is not of such significance to find that a reasonable prison official in the Defendants' situation in this case would thereby have realized that his conduct was wrongful.  Accordingly, Defendants are entitled to immunity from damages in their individual capacities on Plaintiffs' First Amendment claim.

Defendants also argue that they are entitled to immunity from civil damages in their individual capacities on Plaintiffs' RLUIPA claims.  In *Marsh v. Granholm*, 2006 WL 2439760, slip copy at 2 (W.D. Mich. Aug. 22, 2006), the court found the case law from 2003 to 2006 to be unsettled on the question of whether defendant officials could be held individually liable for damages under RLUIPA. Defendants in that case could have reasonably believed that their conduct would not cause them to liable for damages.  The same time period is at issue in this case.  Given the unsettled nature of the law, this Court finds that Defendants are entitled to immunity from damages in their individual capacities for Plaintiffs' claims of violations of RLUIPA.

-19-

K.      *Sovereign Immunity*

Defendants contend that they are entitled to sovereign immunity from damages in their official capacities under RLUIPA because the State has not waived its immunity, and RLUIPA does not contain clear and unequivocal language sufficient to abrogate that immunity. The law on this issue is unsettled. The Sixth Circuit has not addressed the issue. The Fourth Circuit has found that RLUIPA did not abrogate the sovereign immunity of the States from liability for damages. *Madison v. Virginia*, 474 F.3d 118, 131 (4th Cir. 2006). However, the law in this circuit is that damages are available against the State under RLUIPA. *See Price v. Caruso*, 451 F. Supp. 2d 889, 895 (E.D. Mich. 2006) ("Thus, under RLUIPA, Plaintiff may have a claim against Defendant, in her official governmental capacity, for monetary damages."). This Court will follow the law as established by the district court of this district and find that Defendants may be liable for damages in their official capacities under RLUIPA. Defendants' motion for summary judgment on this basis should be denied.

L.      *Plaintiffs' Motion for Preliminary Injunction*

Plaintiffs have filed a motion for a temporary restraining order and preliminary injunction. (Docket nos. 35, 38). Defendants have responded to this motion. (Docket no. 43). Plaintiffs seek an order to prevent Defendants from denying them law library access, denying Plaintiff Berryman employment as a legal writer, denying Plaintiff Koenig enrollment in the treatment programs, denying Plaintiffs due process, retaliating against Plaintiffs with fraudulent major misconduct tickets, and retaliating with transfers.

A court must consider four factors when deciding whether to grant preliminary injunctive relief. First, the court examines whether the plaintiff has shown a likelihood that he will succeed on the merits of the claim. Second, the court considers whether the plaintiff has shown irreparable injury. Third, the court examines whether the issuance of a preliminary injunction would cause substantial harm to others.

-20-

Finally, the court considers whether the public interest would be served by issuing the injunction. *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *El-Shabazz v. Dunn*, 2006 WL 3500621 (W.D. Mich. Dec. 4, 2006). It is extraordinary relief and when a prisoner seeks an injunction against prison officials, the court must proceed with the utmost care and must recognize the unique nature of the prison setting. (*Id.*)

The Plaintiffs' likelihood of success is mixed. Their likelihood of success on most of their claims is not great. There is some likelihood of success on their claim under RLUIPA. Plaintiffs have failed to show that they will likely be irreparably injured without an injunction, however. Specifically, the Court finds no cause to believe that Plaintiffs ability to litigate this case will be impaired without an injunction. Because Plaintiffs are in a prison environment, the issuance of the multi-faceted injunction that Plaintiffs request would present the possibility of harm to the ability of the prison officials to control their prison. Finally, the Court does not find that the public interest would be served by issuing an injunction. Accordingly, the Court finds that after weighing the appropriate factors, Plaintiffs' request for injunctive relief should be denied. Given this finding, Plaintiffs' motion to dispense with security for the injunction should be denied as moot.

## III.   **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve

all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: April 09, 2007                              s/ Mona K. Majzoub_____
                                                   MONA K. MAJZOUB
                                                   UNITED STATES MAGISTRATE JUDGE



**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: April 09, 2007                              s/ Lisa C. Bartlett_____
                                                   Courtroom Deputy