UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP BERRYMAN, et al.,

       Plaintiffs,

vs.

JENNIFER GRANHOLM, et al.,

       Defendants.
_____/

Civil Action No.
06-CV-11010-DT

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER ACCEPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, and GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is presently before the court on defendants' motion for summary judgment [docket entry 31]. Plaintiffs have filed a response brief and defendants have filed a reply. Magistrate Judge Mona K. Majzoub has submitted a report and recommendation in which she recommends that defendants' motion be granted in part and denied in part. Plaintiffs and defendants have filed objections. For the reasons stated below, the court shall accept the report and recommendation in part and reject it in part, and grant defendants' motion for summary judgment.

At the time they commenced this action, plaintiffs Berryman and Koenig were prison inmates who were confined at the St. Louis Correctional Facility in St. Louis, Michigan.[1] Distilled to its essence, the rambling, 26-page, 108-paragraph complaint alleges that defendants violated plaintiffs' rights by removing them from the Kosher Meal Program.[2] Plaintiffs assert eight "causes

---

[1] In the meanwhile, Berryman has been transferred to the Macomb Correctional Facility and Koenig has been transferred to the Saginaw Correctional Facility.

[2] The Kosher Meal Program of the Michigan Department of Corrections ("MDOC") is regulated by Operating Procedure 05.03.150A, a copy of which is attached to defendants' summary judgment motion as Exhibit 18. Inmates who are approved to participate in this

of action" under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. Defendants allegedly have (1) "caused Plaintiffs to be imprisoned within such conditions of confinement which are wholly incompatible with the exercise of the Jewish religion"; (2) "prohibited Plaintiffs . . . from exercising their religion by denying them to eat kosher and meeting for worship on (Sabbath) Saturday"; (3) "prohibited Plaintiffs from exercising their religion by denying them access to a kosher diet, necessary religious worship with other Jewish prisoners on the Sabbath"; (4) "prohibited Plaintiffs . . . from exercising their religion by denying them access to the kosher diet program"; (5) "prohibited Plaintiffs from exercising their [r]eligion by requiring them to hide their religious symbols and e[m]blems from plain sight"; (6) "pr[oh]ibited Plaintiffs . . . from exercising their religion and refusing to allow him [sic] to eat kosher; (7) "created and continue to maintain a pervasive atmosphere of hostility towards Plaintiffs['] . . . exercise of Jewish religion in Michigan's prisons, thus substantially burdening Plaintiffs['] . . . religious exercise"; and (8) refuse[d] to comply with the requirements of RLUIPA, thereby prohibiting Plaintiffs . . . from any meaningful exercise of his [sic] religion." Complaint ¶¶ 94-108.

Plaintiffs seek injunctive relief and damages. Specifically, plaintiffs seek to enjoin defendants from prohibiting them from "conducting or participating in group religious meetings"; "from openly displaying their religious symbols and emblems"; denying plaintiffs "access to privacy therein, to perform their religious rituals and worship"; denying plaintiffs "access to the kosher diet program"; and denying plaintiffs "access to purchase religious items for use in their religion."

---

program receive kosher meals. Inmates may be removed from the program for various reasons, including because they are observed eating or possessing non-kosher food. The first time an inmate is removed from the program, he may reapply for participation after 60 days. If removed again, he may reapply after one year. *See id.*

Plaintiffs also seek compensatory, "general," "spiritual," and punitive damages, costs, attorney fees, and "Sanctions for Comparable Misconduct in the sum of 10% of the federal funds received by the MDOC in the past five years." Complaint at 24-26.

Despite occasional references to other instances of alleged discrimination, *see, e.g.,* Complaint at 2 (defendants allegedly prohibited "group service on the Sabbath" and "possessing certain religious items and . . . displaying the symbols of their religion" and "[r]etaliat[ed] for previous grievances"), the complaint's sole focus is clearly on plaintiffs' claim that defendants have unduly burdened their exercise of religion by removing them from the Kosher Meal Program, in violation of RLUIPA.[3] Both plaintiffs were removed from this program after prison officials determined, based on an administrative hearing, that plaintiffs had ordered non-kosher food items from the prison store, in violation of PD 05.03.150.[4] Plaintiffs admitted having ordered the items in question, but argued they did not violate PD 05.03.150 because they did not purchase the items for themselves, nor were the items found in plaintiffs' possession. Rather, plaintiffs claimed to have ordered the non-kosher food items to give to other inmates, and this itself, plaintiffs claimed, was a religiously required act of charity. Prison officials rejected these arguments and found plaintiffs

---

[3]While the first page of the complaint asserts many other bases for plaintiffs' claims (i.e., § 1983, § 1988, Equal Protection, 1st Amendment, 8th Amendment, 14th Amendment, civil conspiracy, Free Exercise Clause, Bill of Rights, State and Federal Constitutions, Fed. R. Civ. P. 15(d), 57 and 65, 42 U.S.C. §§ 1331 and 1343, 28 U.S.C. §§ 2201 and 2202, and Pendent Jurisdiction), RLUIPA is the only basis mentioned in the "Legal Claims" section of the complaint where plaintiffs' eight causes of action are presented. Therefore, the court interprets the complaint as asserting only claims under RLUIPA.

[4]A copy of Policy Directive 05.03.150, entitled "Religious Beliefs and Practices of Prisoners," is attached to defendants' summary judgment motion as Exhibit 17. Like Operating Procedure 05.03.150A, Policy Directive 05.03.150 provides that the approval for an inmate to eat from a "religious menu" will be rescinded if the inmate eats or possesses food that violates the inmate's religion.

3

guilty to violating both PD 05.03.150 and another Policy Directive that prohibits inmates from selling or giving away any personal property to other inmates.

Reduced to its essence, then, the complaint alleges that defendants violated plaintiffs' rights under RLUIPA by removing plaintiffs from the Kosher Meal Program. As the magistrate judge correctly noted, the defendants who were not personally involved in the decision are entitled to summary judgment on this basis. The court agrees with the magistrate judge that defendants Granholm, Caruso and Straub (the Governor of Michigan, the MDOC director, and the MDOC deputy director, respectively) clearly fall in this category. For present purposes, however, the court shall assume that the remaining defendants (Lafler, Rivard, McCabe, Lance, Wallace, Burnett, Peet and McClellan) were personally involved, to at least some extent, in the decision to remove plaintiffs from the Kosher Meal Program.

Nonetheless, the court shall grant summary judgment for defendants because plaintiffs have not demonstrated that their temporary disqualification from the Kosher Meal Program imposed a "substantial burden" on the exercise of their religion. Further, defendants have shown that the burden is the least restrictive means of furthering compelling governmental interests relating to prison administrative costs. RLUIPA states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling that governmental interest.

42 U.S.C. § 2000cc-1(a). "[F]or a burden on religion to be substantial, the government regulation must compel action or inaction with respect to the sincerely held belief; mere inconvenience to the

religious institution or adherent is insufficient." *Jesus Christ Prison Ministry v. California*, 456 F. Supp.2d 1188, 1204 (E.D. Cal. 2006), *citing Jolly v. Coughlin*, 76 F.3d 468, 477 (2nd Cir. 1996). Put somewhat differently, "a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). If an inmate demonstrates that a sincerely held religious belief is substantially burdened by a prison regulation, the court must weigh the proffered justification for the burden with due deference to the security and other administrative concerns of prison officials. In this regard the Supreme Court has indicated:

> We have no cause to believe that RLUIPA would not be applied in an appropriately balanced way, with particular sensitivity to security concerns. . . . Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. . . . They anticipated that courts would apply the Act's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."

*Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005) (citations omitted). Similarly, the Sixth Circuit has stated that "'the courts must defer to the expert judgment of the prison officials unless the prisoner proves by substantial evidence that the officials have exaggerated their response to security considerations.'" *Hoevenaar v. Lazaroff*, 422 F.3d 366, 370 (6th Cir. 2005), *quoting Espinoza v. Wilson*, 814 F.2d 1093, 1099 (6th Cir. 1987).

In the present case, plaintiffs claim that their temporary disqualification from the Kosher Meal Program burdens their exercise of Judaism because they are prevented from eating

5

kosher food.[5] For present purposes, the court assumes plaintiffs sincerely believe that the consumption of such food is required by their religion.[6] However, plaintiffs have not demonstrated that their suspension from the program *substantially* burdens this religious exercise. The court is unaware of any case authority standing for the proposition that a *temporary* suspension of an inmate's participation in a meal program that caters to his religious needs constitutes a substantial burden. Rather, cases in which a substantial burden have been found involved a *permanent* prohibition. *See, e.g., Jesus Christ Prison Ministry, supra* (prison policy prohibited inmates from receiving religious literature from any unapproved vendor); *Madison v. Riter*, 240 F. Supp.2d 566 (W.D. Va. 2003) (inmate denied any participation in kosher meal program), *reversed on other grounds*, 355 F.3d 310 (4th Cir. 2003); *Marria v. Broaddus*, 2003 WL 21782633 (S.D.N.Y. July 31, 2003) (inmate prohibited from receiving any literature pertaining to his religion or gathering with other members).

Even if the temporary suspension from the Kosher Meal Program did constitute a substantial burden, defendants have shown that their decision furthered compelling governmental interests in the least restrictive way. Defendant Burnett avers that this meal program costs two to three times as much to operate as the regular prison meal program. Burnett Affidavit ¶ 30. The MDOC therefore has a compelling financial interest in ensuring that kosher food is served only to

---

[5]The court shall dismiss as frivolous the claim that plaintiffs must remain in the program in order to fulfill their religious duty to give food to needy fellow inmates. Even assuming that charitable giving is a sincerely held religious belief, plaintiffs have not shown that their temporary disqualification from the Kosher Meal Program interferes in the slightest with this exercise of their religion.

[6]This assumption is questionable, given that plaintiffs did not reapply to participate in the program after the suspension period ended. *See* Burnett Affidavit ¶¶ 20, 21, 24.

those inmates who sincerely need it for religious reasons. Defendants could reasonably doubt the sincerity of an inmate who orders non-kosher food from the prison store. The policy at issue imposes the least restrictive burden on inmates caught purchasing non-kosher food from the prison store because such inmates are not banned permanently from participation in the program, but only for a period of time (60 days for the first violation, one year for subsequent violations) and with the opportunity thereafter to reapply. This financial reason for limiting access to the Kosher Meal Program is among those specifically recognized by the Supreme Court as "compelling." And the policy abides by the "least restrictive" requirements by removing violators only temporarily and permitting them to reapply.

Quite apart from the merits, plaintiffs' RLUIPA claim fails for two other reasons. First, to the extent plaintiffs seek injunctive relief, their request is moot because plaintiffs have been transferred to another prison. *See Henderson v. Martin*, 73 Fed.Appx. 115, 117 (6th Cir. 2003); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

Second, to the extent plaintiffs seek damages, defendants are entitled to qualified immunity because the claimed right at issue in this case (to not be removed temporarily from a Kosher Meal Program after being caught ordering non-kosher food) is not clearly established. Under *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), and *Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987), a government official exercising discretionary authority cannot be held liable in damages unless he violates a clearly established right. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640. "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, or the district court itself, or case law from other circuits which is directly

7

on point." *Barrett v. Harington*, 130 F.3d 246, 264 (6th Cir. 1997). Plaintiffs have not cited, and the court is not aware of, any case authority clearly establishing the right they claim defendants violated. Under these circumstances, plaintiffs' claim for money damages may not proceed.

For the reasons stated above, the court concludes that plaintiffs' claim fails not only on the merits, but also because the request for injunctive relief is moot and because defendants are qualifiedly immune from damages. Accordingly,

IT IS ORDERED that defendants' motion for summary judgment is granted.

IT IS FURTHER ORDERED that all other pending motions are denied as moot.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation is accepted and adopted insofar as it is consistent with this opinion, but otherwise it is rejected.

_____s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: August 3, 2007
Detroit, Michigan

I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

s/Carol Mullins
Case Manager to Chief Judge Friedman